# THE COMMONWEALTH COURT OF PENNSYLVANIA

Pinnacle Health System,          :
               Petitioner     :
                                 :
            v.                   :    18 C.D. 2014
                                 :    Submitted: July 3, 2014
Unemployment Compensation     :
Board of Review,                :
               Respondent    :

BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**              **FILED: August 12, 2014**

       Pinnacle Health System (Employer) petitions for review from an order of the Unemployment Compensation Board of Review (Board) that granted Vasthie Dehart's (Claimant) application for unemployment compensation benefits. The Board's order adopted and incorporated a referee's decision holding Employer failed to prove it discharged Claimant for willful misconduct under Section 402(e) of the Unemployment Compensation Law (Law).[1] Employer contends the Board disregarded the weight of the evidence and erred as a matter of law in its determination that Claimant did not commit willful misconduct. To that end, Employer asserts Claimant, after being denied a transfer, engaged in unsafe work practices to such a degree as to manifest culpability and an intentional disregard of Employer's interests. Upon review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(e). Section 402(e) of the Law states an employee shall be ineligible for compensation for any week in which his unemployment is due to willful misconduct connected to her work.

# I. Background

The referee found the following relevant facts. Claimant worked for Employer as a medical assistant from August 2011 until her last day of work on August 2, 2013.

Employer's HR #5 Policy, "Corrective Action," provides a list of performance deficiencies which may result in corrective action, up to and including termination. See Reproduced Record (R.R.) at 61a-66a. Among many other items, the list includes "unsafe work practices." Id. at 66a. Claimant signed an employee handbook acknowledging she understood Employer's policies. Id. at 67a.

In May 2013, Claimant transferred from a cardiologist's office to Employer's family practice office. Employer provided Claimant with orientation on several procedures. In mid-July 2013, Claimant requested a transfer back to her previous office despite her knowledge that Employer's policies required her to work at least six months at the family practice site before she could request a transfer. Nonetheless, Claimant did not want to continue working in the family practice office, and she indicated she needed more training. Employer encouraged Claimant to remain at the family practice site and request additional training. Employer advised Claimant that she just transferred two months ago and could not transfer again at that time.

Employer terminated Claimant following four incidents occurring on or before June 29, 2013. See R.R. at 9a-10a. First, Claimant and a coworker

overloaded a urine centrifuge, which caused it to break. Second, Claimant failed to call a nurse at another facility to inform her of a patient's test results. The nurse called back hours later, which resulted in delayed patient care. Third, Claimant failed to ask a minor child to remove her shoes when taking her height and weight measurements during a pediatric physical. Fourth, Claimant, distracted by a coworker, gave a patient an incorrect injection of PPD, which is a test for tuberculosis. Claimant mistakenly gave the patient five times the correct dosage. Fortunately, this only resulted in a slight skin reaction and the need for the patient to return to the office for another test. On August 2, 2013, Employer terminated Claimant for unsafe work practices and continuous substandard performance. Id.

The referee, however, found that Claimant worked to the best of her ability, and that Employer fell short of establishing willful misconduct. In addition to demonstrating a claimant failed to meet expectations, an employer must also show the claimant failed to work to the best of her ability.

Here, the referee observed, Employer indicated the two incidents leading to Claimant's termination involved a broken centrifuge and a patient receiving an incorrect dosage during an injection. At hearing, when asked by Employer's Senior HR Consultant, Allison Beck (HR Consultant) why she terminated Claimant, Employer's Regional Office Manager, Christy Laudig (Office Manager) testified as follows:

> **EW1:** Can you explain your decision to move straight to termination rather than provide [Claimant] with any specific written warnings?

3

EW2: Due to the last one which was the unsafe work habits and the centrifuge but it was mostly the PPD being applied with the incorrect dosage we felt it would be proper to move right to termination, since she had been trained, signed off we were afraid that if it was a different injection it could cause other results, harmful results to another patient if it was a different injection and not the PPD.

Referee's Hearing, Notes of Testimony[2] (N.T.), 10/2/13, at 11; R.R. at 34a.

First, the referee observed, the centrifuge broke by accident. Employer did not establish Claimant willfully or intentionally broke the centrifuge.

Second, Claimant admitted she gave a patient the incorrect dosage for a tuberculosis test because she was distracted by a coworker. However, Claimant immediately brought this incident to Employer's attention. As such, the referee attributed Claimant's actions to carelessness and inattention, not willful or intentional misconduct. See Referee's Dec., 10/4/13, at 2-3. Consequently, the referee determined Employer failed to sustain its burden of showing it discharged Claimant for actions that constitute willful misconduct.[3] Referee's Dec. at 3.

---

[2] Certified Record at Item No. 8.

[3] As a separate issue, the referee found that as a result of knee surgery, Claimant did not become eligible for benefits under Section 401(d)(1) of the Law, 43 P.S. §801(d)(1) (qualifications for compensation, ability to work) until the work week ending August 24, 2013. The date of Claimant's ability to work is not at issue in this appeal.

On appeal, the Board affirmed. In so doing, the Board adopted and incorporated the referee's findings and conclusions. Employer petitions for review.[4]

## II. Discussion
## A. Willful Misconduct

Willful misconduct is defined by the courts as: (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations. Grieb v. Unemployment Comp. Bd. of Review, 827 A.2d 422 (Pa. 2002); Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006 (Pa. Cmwlth. 2014). The employer bears the initial burden of establishing a claimant engaged in willful misconduct. Id. Whether a claimant's actions constitute willful misconduct is a question of law fully reviewable on appeal. Id.

Further, in Navickas v. Unemployment Compensation Board of Review, 787 A.2d 284 (Pa. 2001), the Supreme Court explicitly rejected the position that, in willful misconduct cases, health care providers may hold their health care employees to a higher standard of behavior than other employees. In

---

[4] Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. Doyle v. Unemployment Comp. Bd. of Review, 58 A.3d 1288 (Pa. Cmwlth. 2013). Substantial evidence is evidence which a reasonable mind would accept as adequate to support a conclusion. Umedman v. Unemployment Comp. Bd. of Review, 52 A.3d 558 (Pa. Cmwlth. 2012).

5

rejecting the argument that inadvertent, careless or negligent mistakes by health care employees may amount to willful misconduct, the Supreme Court emphasized, "[m]ere 'negligence' does not rise to the level of 'willful misconduct' without the additional element of an intentional disregard of the employer's interests." Navickas, 787 A.2d at 290 (citation omitted). In explaining its decision, the Court observed:

> we specifically reject the Commonwealth Court's adoption of an *ad hoc* 'higher standard of care' for health care workers, which apparently would permit any act of negligence or inadvertence on the part of a health care worker, standing alone, to be deemed willful misconduct. In so doing, we do not dispute that the needs of certain health care employers are such that they might reasonably deem any act of negligence sufficiently serious as to warrant termination of employment. Nor do we doubt there are other occupations of sufficient gravity that employers might reasonably conclude that even isolated acts of negligence are sufficiently serious as to warrant termination. But those are questions of policy not posed by the [Law] we are called upon to construe. The [Law] sets forth a **single** governing standard of willful misconduct, one that does not draw distinctions based upon the type or nature of the work involved.

Id. at 290-91 (italics and bolding in original).


### B. Board's Province as Fact-Finder

We also note the Board is the ultimate fact-finder in UC cases and is empowered to resolve all issues of witness credibility, conflicting evidence and evidentiary weight. Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review, 949 A.2d 338 (Pa. Cmwlth. 2008). Also, it is irrelevant whether the record includes evidence that would support findings other than those made by the

6

Board; the proper inquiry is whether the evidence supports the findings actually made. Id. Further, the party prevailing below is entitled to the benefit of all reasonable inferences drawn from the evidence. Id. With these principles in mind, we review Employer's appeal.

## C. Argument

Employer contends the Board disregarded the weight of the evidence and erred in determining Claimant did not commit willful misconduct where she engaged in unsafe work practices and substandard performance to such a degree as to manifest culpability, and an intentional disregard of Employer's interests, as well as Claimant's duties to Employer. Claimant's disregard of Employer's treatment and safety protocols is the type of conduct that this Court repeatedly determined to be willful misconduct. In addition, Employer argues it has a reasonable policy proscribing unsafe work practices, which Claimant violated.

In support of its position, Employer cites Cullison v. Unemployment Compensation Board of Review, 444 A.2d 1330 (Pa. Cmwlth. 1982). There, we recognized that a showing of a claimant's actual intent to wrong an employer is not required to establish willful misconduct. Rather, a showing of a conscious indifference to the employer's interests or the claimant's duties will suffice. Id.

In Cullison, we noted, mere incompetence, inexperience or inability of an employee may justify a discharge, but does not constitute willful misconduct rendering the employee ineligible for benefits. However, where the record shows that despite his ability to perform the work, the claimant's work performance

7

progressively worsened and that he acted carelessly, the claimant's failure to work at his proven skill level demonstrated not only an intentional and substantial disregard of the employer's interests, but also a disregard of the claimant's duties and obligations. Id.

More recently, in Scott v. Unemployment Compensation Board of Review, 36 A.3d 643 (Pa. Cmwlth. 2012), this Court applied the rationale in Cullison and similar decisions[5] to a case where the claimant's job duties included inspecting trays and medical instruments used in a hospital's surgical procedures to ensure they were clean prior to sterilization. In Scott, the employer discharged the claimant for continued poor work performance. The claimant repeatedly processed unclean trays, which, in some cases, contained materials remaining from previous surgeries. Clearly, this posed a significant risk for the employer's surgical patients. Despite a warning about processing unclean trays, the claimant's work performance did not improve. As a result, the employer discharged him for violating its cleanliness policy.

Ultimately, we affirmed the Board's denial of benefits in Scott. In so doing, we reasoned the claimant's continued poor work performance demonstrated an intentional disregard of the employer's interests and the claimant's duties and obligations. Id.

---

[5] Employer cites several other cases where this Court affirmed the denial of benefits under Section 402(e) of the Law (willful misconduct) where the claimant's poor work performance fell below his or her previously exhibited proficient work skills. See, e.g., Shearer v. Unemployment Comp. Bd. of Review, 527 A.2d 615 (Pa. Cmwlth. 1987); Kosmalski v. Unemployment Comp. Bd. of Review, 397 A.2d 875 (Pa. Cmwlth. 1979).

In light of <u>Scott</u>, <u>Cullison</u>, and similar cases, Employer contends the Board erred in determining Claimant's substandard performance and unsafe work practices, as evidenced by the incidents leading to her discharge, did not rise to the level of willful conduct under Section 402(e) of the Law.

First, Employer asserts, on June 24, 2003, Claimant improperly loaded multiple urine samples into a centrifuge, which caused the glass to shatter and the machine to break. Another medical assistant, April Wetzer (MA Wetzer), testified medical assistants were trained to never put more than one patient's urine in the centrifuge at once because the vials are not labeled. N.T. at 17; R.R. at 40a. Thus, contrary to the Board's findings, Employer argues the damage to the centrifuge was not an accident. Rather, Claimant's conscious indifference to her training and orientation caused the damage to Employer's property.

Employer further contends there is no evidence, aside from Claimant's testimony, that another employee also loaded the centrifuge. Prior to the referee's hearing, Claimant did not inform Employer that a second employee was involved. Further, Claimant did not identify the other employee. Also, MA Wetzer testified she witnessed Claimant load the centrifuge and did not see anyone else there. N.T. at 17; R.R. at 40a. In light of these circumstances, Employer maintains the record does not contain substantial evidence supporting the Board's finding that Claimant and a coworker both loaded the centrifuge, causing it to break.

9

Moreover, Employer contends the incident in which Claimant injected a patient with the wrong dosage of PPD, a test for tuberculosis, clearly established she engaged in unsafe work practices. Employer argues this incident, could, by itself, support a finding of willful misconduct. Office Manager recalled that Claimant explained her mistake by stating that she was talking to someone else while preparing the injection, and the number "five" was mentioned. N.T. at 13; R.R. at 36a. That is why Claimant drew up 0.5 ml, rather than the normal dose of 0.1 ml. Id.

Employer argues the Board erred in determining this incident merely constituted carelessness. MA Wetzer testified that when giving an injection, Employer's medical assistants are taught to double check five things, including whether they have the right patient, the right route, the right medicine and the right dosage. N.T. at 18; R.R. at 41a. Here, Claimant did not perform the double check as required. Id. Thus, Employer argues Claimant's conduct constituted negligence and an abrogation of her duty of care to her patient. Claimant's actions during this incident, particularly her failure to comply with the safety check procedure for injections, constituted a substantial disregard of Employer's interests and Claimant's duties. Scott; Cullison.

With regard to the other two incidents cited as reasons for Claimant's discharge, Employer asserts Claimant failed to follow an assignment to notify a nurse at another facility of a medical test result. Office Manager testified that a nursing facility called regarding a patient's test results and that they expected a call back. See N.T. at 8; R.R. at 31a. Claimant reviewed the note but never returned

the call.  Id.  Hours later, the nurse called back.  Id.  Nonetheless, Employer maintains that Claimant's failure to relay the test results caused a delay in the patient's treatment and reflected poorly on Employer.

In addition, Employer contends Claimant's disregard of her duties continued when she failed to remove a minor patient's shoes for a physical examination while recording the patient's height.  Office Manager testified an accurate height measurement is an important component of a physical examination.  N.T. at 8; R.R. at 31a.

Summarizing, Employer argues that following the denial of Claimant's request for a transfer back to her previous location, Claimant's work performance deteriorated to such a degree and with such recurrence as to manifest culpability and an intentional and substantial disregard of Employer's interests.  As such, Employer maintains Claimant's unsafe work practices and continuous substandard performance, as reflected by the four incidents discussed above, fall squarely within the four corners of willful conduct.  Scott; Cullison.

Therefore, Employer urges, Claimant's willful misconduct disqualifies her from receiving benefits under Section 402(e) of the Law.  Accordingly, Employer requests we reverse the Board's award of benefits.

**D. Analysis**

Where a claimant's substandard work performance is the result of her unwillingness to work to the best of her ability, a disqualification for benefits

under Section 402(e) is proper. Geslao v. Unemployment Comp. Bd. of Review, 519 A.2d 1096 (Pa. Cmwlth. 1987). However, where the claimant worked to the best of her ability and did not fully understand the procedures to be followed in her job, her mistakes did not rise to the level of willful misconduct. Id. To that end, "[w]e have held that a finding that a claimant worked to the best of his ability negates a conclusion of willful misconduct." Norman Ashton Klinger & Assocs. v. Unemployment Comp. Bd. of Review, 561 A.2d 841, 843 (Pa. Cmwlth. 1989); see also Rung v. Unemployment Compensation Board of Review, 689 A.2d 999 (Pa. Cmwlth. 1987) (a bank teller's errors, which resulted in repeated shortages in her till, although unequivocally careless, did not constitute an intentional disregard of her employer's interests justifying a denial of benefits under Section 402(e)); Norman Ashton (a beginning attorney's unsatisfactory performance did not constitute willful misconduct so as to preclude his receipt of UC benefits where he worked to the best of his ability); Younes v. Unemployment Comp. Bd. of Review, 467 A.2d 1227 (Pa. Cmwlth. 1983) (a claimant's inability to complete her work assignments, although a result of poor work habits, did not constitute a conscious disregard of her employer's interests).

Here, the Board found Claimant worked to the best of her ability. F.F. No. 15. Before the referee, Claimant testified as follows (with emphasis added):

> **R:** Okay and there was testimony that your work at the beginning following the training was apparently satisfactory but later on your work had gone downhill that you were not completing tasks. You were only doing partial tasks. Do you agree with that that you – because you were unhappy that you were not doing your best?
> **C:** No ma'am.

12

**R:** No?
**C:** No, I don't agree with that.
**R:** <u>Were you working to the best of your ability?</u>
**C:** <u>Yes</u>.
**R:** <u>Did you knowingly or intentionally violate any of the policies?</u>
**C:** <u>No, not intentionally</u>.

N.T. at 26; R.R. at 49a.

In reviewing the first of the two major incidents reviewed by Employer, the referee credited Claimant's testimony that on July 24, 2013, she and another coworker loaded vials of urine into the centrifuge at the same time, which caused it to break. F.F. No. 10; N.T. at 22-23; R.R. at 45a-46a. Despite Employer's repeated assertions to the contrary, Claimant specifically testified another employee put in a container of urine. N.T. at 23; R.R. at 46a.

In addition, although Claimant received some training on the centrifuge, she testified she "was not used to … using a centrifuge[.]" N.T. at 14; R.R. at 37a. Given these circumstances, we find Employer failed to establish that Claimant intentionally violated its rules or policies regarding use of the centrifuge. At most, Claimant's actions constituted a careless mistake shared with a coworker.

In addition, we reject Employer's contention that Claimant's testimony, by itself, does not provide substantial evidence for the Board's finding that a coworker also loaded the centrifuge. Even assuming Claimant did not mention a coworker prior to the referee's hearing, this would go to the issue of Claimant's credibility or the weight assigned her testimony. Both such matters fall within the province of the Board. <u>Ductmate Indus.</u>

13

Further, although MA Wetzer did not see anyone else load the centrifuge, she nonetheless testified: "I do not know if anyone else put anything in the machine." N.T. at 17; R.R. at 40a (emphasis added). It is also within the province of the Board to resolve any conflicts in the evidence. Ductmate Indus.

Finally, it is irrelevant whether the record includes evidence that would support findings other than those made by the Board; the proper inquiry is whether the evidence supports the findings actually made. Id.

Here, the referee and the Board found Claimant credible and resolved the conflicts in the evidence in her favor. Therefore, viewing the record in a light most favorable to Claimant as the prevailing party, we hold Employer failed to establish that Claimant's use or misuse of the centrifuge constituted an intentional or substantial disregard of Employer's interests as to amount to willful misconduct under Section 402(e) of the Law. Rung; Norman Ashton.

Similarly, our review of the July 29, 2013 incident involving the injection overdose does not, by itself, establish an intentional disregard of Employer's interests or Claimant's duties justifying a disqualification for benefits. Navickas (errors in patient care constituting mere negligence do not rise to the level of willful misconduct without the additional element of an intentional disregard of the employer's interests). Although Claimant admitted receiving training on the giving of injections, her drawing the incorrect dosage under circumstances where she was distracted by a coworker does not compel the conclusion Employer seeks.

14

We recognize Claimant's administration of the wrong dosage to one of her patients could be considered unequivocally careless. However, absent credible evidence establishing an intentional disregard of the employer's interests or the claimant's duties and obligations, a health care worker's medication error does not necessarily rise to the level of willful misconduct. Id.

Here, Claimant testified a coworker distracted her while she drew the dosage. F.F. Nos. 11; N.T. at 13-14, 24; R.R. at 36a-37a, 47a. As a result of the distraction, Claimant gave the patient five times the correct dose. Id. However, when charting the injection immediately after giving it, Claimant realized her mistake and contacted Office Manager. F.F. No. 12; N.T. at 24-25; R.R. at 47a-48a. As a result of Claimant's mistake, the patient had a slight skin reaction. F.F. No. 13; N.T. at 25; R.R. at 48a. Regardless, Claimant's inadvertent, unintentional mistake does not establish willful misconduct. Navickas.

For the same reason, even assuming Claimant's one-time unintentional failure to follow Employer's self-check procedure while giving an injection constituted an unsafe work practice for purposes of Employer's own policies, it does not rise to the level of disqualifying willful misconduct as a matter of law. Navickas.

With respect to the two other incidents, an employer must establish that the act in question constituted the actual reason for the claimant's discharge. Saleem v. Unemployment Comp. Bd. of Review, 35 A.3d 1283 (Pa. Cmwlth. 2012) (citing Panaro v. Unemployment Comp. Bd. of Review, 413 A.2d 772 (Pa.

15

Cmwlth. 1980)). "Mere dissatisfaction with an employee's performance will not disqualify the employee from receiving benefits upon his discharge; the employer must shoulder his burden of proof by demonstrating that a specific transgression or amalgam of transgressions amounting to willful misconduct precipitated the employee's dismissal." Tundel v. Unemployment Comp. Bd. of Review, 404 A.2d 434, 435 (Pa. Cmwlth. 1979).

Employer argues the two other incidents, where Claimant failed to inform another facility of a patient's tests results as requested, and where Claimant did not remove a pediatric patient's shoes prior to measuring her height, were not trivial. Employer further contends these two incidents reflect Claimant's substandard performance following the denial of her transfer request. However, Employer failed to establish it discharged Claimant based on these incidents. As discussed above, Office Manager testified Employer terminated Claimant's employment based on the centrifuge and injection overdose incidents. See N.T. at 11; R.R. at 34a. Consequently, the Board did not err in failing to find that either of these incidents constituted willful misconduct justifying the denial of benefits under Section 402(e) of the Law. Saleem; Tundel.

Nevertheless, we discern no error or abuse of discretion in the Board's reasoning that Claimant's failure to remove a patient's shoes before taking her height does not rise to the level of willful misconduct. See Referee's Dec. at 3. Claimant explained that when she worked at the cardiology office, the patient decided whether or not to take off his or her shoes. N.T. at 21; R.R. at 44a.

Following this one incident, Claimant always requested that a patient remove his or her shoes. Id.

Finally, although the Board did not address the incident where Claimant failed to notify another facility of a patient's test results, Employer failed to establish this incident resulted from anything more than mere carelessness. Office Manager testified only that Claimant offered no explanation as to why she failed to contact the other office regarding the patient's test results. As such, Claimant's conduct, although careless, does not rise to the level of willful misconduct. Navickas; Rung; Norman Ashton.

### III. Conclusion

For the above reasons, we discern no error in the Board's determination that Employer failed to sustain its burden of proving that it discharged Claimant as a result of actions that constitute willful misconduct. Accordingly, we affirm the Board's order ruling Claimant not ineligible for benefits under Section 402(e) of the Law.

ROBERT SIMPSON, Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pinnacle Health System,             :
                    Petitioner     :
                                              :

           v.                       :     18 C.D. 2014
                                                :

Unemployment Compensation           :
Board of Review,                    :
                    Respondent     :

## **O R D E R**

**AND NOW**, this 12th day of August, 2014, for the reasons stated in the foregoing Opinion, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

 

                                             _____
                                             ROBERT SIMPSON, Judge