Robert R. Davis, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued February 5, 1981, before Judges MENCER, ROGERS and CRAIG, sitting as a panel of three.

*Kathleen R. Mulligan,* for petitioner.

*Charles G. Hasson,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Acting Attorney General, for respondent.

OPINION BY JUDGE ROGERS, March 13, 1981:

Robert R. Davis, a porter at Joseph Horne Company, a department store, was questioned on June 7, 1979, by employees of the store's security department concerning the theft of store merchandise. In the course of this encounter, he wrote and signed a statement admitting the theft of $2,000.00 worth of merchandise and executed a judgment note for the $2,-000.00 to provide reimbursement. Davis was suspended from his employment by the security personnel at the time he admitted the thefts and eventually discharged on June 29, 1979.

On June 12, 1979, while still under suspension, Davis applied for unemployment benefits and gave as the reason for his alleged unemployment, "laid off—lack of work". The Office of Employment Security, after receiving the employer's statement, determined that the claimant was ineligible for benefits by reason of his willful misconduct under Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e). The Office also determined that the claimant had received a fault overpayment of $90.00 based on the false information he gave to the local office. The claimant appealed both determinations.

At the referee's hearing, Davis testified that he had stolen nothing and that he signed the statement and note under coercion of the employer's security people consisting of threats of criminal prosecution and loss of employment. Davis also testified he was

not permitted to leave the room where he was questioned and that he was promised that if he signed the statement and note his only punishment would be a suspension from work for two days. The employer representative who testified at the hearing was not present during Davis' questioning by others but was present when Davis signed the statement and note. The referee, who denied compensation, made numbered findings that Davis admitted stealing and signed the statement and the note. In a discussion, the referee wrote that Davis' action in taking merchandise without authorization or payment was willful misconduct. The Unemployment Compensation Board of Review (Board) added findings that Davis was not coerced, threatened or promised "immunity from prosecution" or "reinstatement of his job" if he signed the statement and note.

Davis asserts that the employer had the burden of proving that his writing and signing of the statement and signing of the note were not coerced and that the Board's finding that he was not coerced is not supported by substantial evidence. The claimant has stated the law applicable in criminal proceedings. In civil matters the party asserting that he has been the victim of coercion has the burden of proving its existence. *Heckman v. Heckman*, 215 Pa. 203, 64 A. 425 (1906). Since the burden was on Davis to prove the coercion and the Board's finding was against him, the question is whether the finding was the result of capricious disregard of competent evidence. *Philadelphia Geriatric Center v. Unemployment Compensation Board of Review*, 46 Pa. Commonwealth Ct. 357, 406 A.2d 1177 (1979). Assuming that Mr. Davis would argue that his testimony was the only account of what took place during the questioning and that this testimony was what was capriciously disregarded, the answer is that a capricious disregard constitutes disbe-

lief of testimony which someone of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to its truth. *Workmen's Compensation Appeal Board v. Republic Steel Corp.*, 26 Pa. Commonwealth Ct. 285, 364 A.2d 513 (1976). It will be recalled that Mr. Davis told the Office of Employment Security that he was laid off for lack of work. Surely persons of ordinary intelligence could, in view of this egregious misstatment, challenge and, in challenging, disbelieve, his account of threats and promises during his questioning.

Since the Board properly found that the claimant's admission of theft was not coerced and that he stole merchandise from the store, its conclusion that Davis had engaged in willful misconduct was not error, as Davis argues, because it was his only offense. Even one theft can constitute willful misconduct. *Kostik v. Unemployment Compensation Board of Review*, 12 Pa. Commonwealth Ct. 32, 315 A.2d 308 (1974). The case of *O'Keefe v. Unemployment Compensation Board of Review*, 18 Pa. Commonwealth Ct. 151, 333 A.2d 815 (1975), cited in the claimant's brief for the proposition that an uncorroborated admission of theft is insufficient for a finding that the claimant stole from the employer, is inapposite since the record in that case clearly showed that, before O'Keefe was fired for eating stale discarded pastries, the employer had been aware of its employees' practice in this regard and had not sought to prevent it.

Finally, Davis contends that he did not receive a fault overpayment because there is no evidence in the record to establish impropriety on his part. In *Beres v. Unemployment Compensation Board of Review*, 38 Pa. Commonwealth Ct. 457, 393 A.2d 1073 (1978), we held that an employee who was fired for drinking on the job and told that he was being discharged for that reason, made a material misrepresentation constitu-

ting fault when he stated on his application for benefits that he had been laid off because of a reduction in work shifts. Similarly, the claimant in the present case knew that his supension was not for lack of work and so received a payment he would not have got had he told the truth.[1]

Order affirmed.

ORDER

AND Now, this 13th day of March, 1981, the Board of Review's decision and Order is affirmed.

---

[1] A document in the record shows that sometime before June 25, 1979, the claimant told the Office of Employment Security of the reason for his suspension. The fact remains that the claimant concealed the true nature of his separation at the time of applying for benefits on June 12, 1979.