# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andrea Briggs,                          :
                                        :
                    Petitioner          :
                                        :
          v.                            :     No. 109 C.D. 2015
                                        :
Unemployment Compensation               :     Submitted: July 17, 2015
Board of Review,                        :
                                        :
                    Respondent          :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                    **FILED:  September 8, 2015**

Andrea Briggs (Claimant) petitions for review of the Order of the Unemployment Compensation (UC) Board of Review (Board) that affirmed the UC Referee's (Referee) Decision finding Claimant ineligible for UC benefits pursuant to Section 402(e) of the UC Law[1] (Law) because she engaged in willful misconduct related to her work.  On appeal, Claimant argues that the Board erred in finding her ineligible because:  (1) she did not violate Macy's Wyoming Valley

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e) (providing, in relevant part, that an employee is ineligible for UC benefits for any week the employee's "unemployment is due to h[er] discharge or temporary suspension from work for willful misconduct connected with h[er] work").

Mall's (Employer) policy under the circumstances; (2) if she did violate the policy, she had good cause for doing so; and (3) the written admission of her violation of the policy relied upon by the Board was the result of coercion and, therefore, should not have been considered. Discerning no error, we affirm.

Claimant worked as a visual manager for Employer for fourteen years until she was discharged for violating Employer's "policy concerning the issuance of 'Macy Money.'" (Referee Decision, Findings of Fact (FOF) ¶¶ 1-3.) "Macy Money" is, essentially, a coupon issued by Employer's managers to sales associates or other managers that allows the recipient to purchase an item at up to a fifty percent discount. (FOF ¶¶ 4, 6.) According to Employer, "Macy Money" is to be issued under certain programs as set forth in its policy. (FOF ¶ 8.) Claimant, who was authorized to issue "Macy Money," was discharged for giving "Macy Money" for reasons other than those provided in the policy. (FOF ¶¶ 3, 8, 16.)

Claimant filed a claim for UC benefits, which the local UC Service Center granted. (Notice of Determination, R. Item 5.) Employer appealed and the matter was assigned to the Referee for a hearing. Employer appeared, with counsel, and offered the testimony of its Human Resource Manager (HR Manager) and District Director for Loss Prevention (Loss Prevention Director). Employer presented a copy of the relevant portions of its Employee Handbook and Code of Conduct that outlined its "Macy Money" policy and the requirement that its employees act with honesty. (Ex. E-1, R.R. at 61a-66a.) HR Manager indicated that "Macy Money" should only be given for the reasons set forth in the policy and that Employer's managers, such as Claimant, would have been trained in the proper use of "Macy Money." (Hr'g Tr. at 7-9, R.R. at 14a-16a.) Employer also offered a statement

2

(Statement) prepared by Loss Prevention Director, and signed by Claimant, in which Claimant admitted that she violated the policy by printing "Macy Money" for individuals for various reasons and received "Macy Money" in return. (Statement, R.R. at 67a-69a.) One of the reasons included in the Statement for Claimant giving "Macy Money" to a co-worker was because the co-worker could not use her employee discount on an item. (Statement at 1, R.R. at 67a.) Loss Prevention Director indicated that: Claimant was not forced to sign the Statement; she had the opportunity to make changes to the Statement, of which she took advantage; and, after the changes were made, Claimant signed the Statement and indicated that it was a true representation of what transpired during the meeting. (Hr'g Tr. at 13-17, 19, R.R. at 20a-24a, 26a.)

Claimant testified on her own behalf and presented the testimony of four other managers or former managers of Employer. Claimant and several of her witnesses explained that, in this particular store, managers, including the former store manager, would issue "Macy Money" for work-related reasons outside those set forth in the policy, such as an employee exceeding his or her presales goals or going above and beyond the employee's normal duties to benefit the store. (Hr'g Tr. at 24-27, 30, 32-33, 35, 37-38, 40-41, 43-44, 49-51, R.R. at 31a-34a, 37a, 39a-40a, 42a, 44a-45a, 47a-48a, 50a-51a, 56a-58a.) Claimant objected to the Statement because: it was not written by her, but by Loss Prevention Director; she was forced and/or coerced into signing it under threat of discharge for being uncooperative with the investigation; she was never given the report indicating how much "Macy Money" she issued and received; and it was not an accurate reflection of her interview with Loss Prevention Director. (Hr'g Tr. at 20, 24, 30-31, R.R. at 27a, 31a, 37a-38a.) Claimant presented a written statement which she

3

gave to Employer during its internal appeal process that explained, in her own words, what happened during that interview. (Hr'g Tr. at 23-24, R.R. at 30a-31a; Ex. C-1, R.R. at 70a-75a.)

Based on this evidence, the Referee made the following relevant findings of fact:

8. As a visual manager, the claimant was authorized to issue "Macy Money" to employees for [the] reasons set forth in [Employer's] policy (E-1). In addition to the reasons provided, managers would also issue "Macy Money" to employees to recognize loyalty for going above and beyond and for presales.

9. The presales reason for issuing "Macy Money" is not listed in [Employer's] policy.

10. Presales occurred at the store monthly.

11. All managers would issue "Macy[] Money" to employees if the employee met [his or her] presales goal.

12. [The p]revious store manager . . . would give money to managers and employees for . . . "a job well done" and for employees['] service during the Christmas sales.

13. The claimant signed a [S]tatement (E-2).

14. The claimant admitted in her [S]tatement printing "Macy Money" that was not authorized (E-2).

15. The claimant also admitted printing $522 in "Macy Money" for Christy El[ias] and most of the money printed for Christy Elias was because she asked for it (E-2).

16. The printing of money for Christy Elias violated the employer's policy.

4

17. When the claimant printed ["]Macy Money["] for a manager, she would typically receive ["]Macy Money["] from the manager in return.

18. The claimant did not have good cause for violating the policy.

(FOF ¶¶ 8-18.)

The Referee held that, although Employer had a set policy for issuing "Macy Money," the store at which Claimant worked had broader standards for issuing "Macy Money." (Referee Decision at 2.) The Referee indicated that, had it not been for the Statement, the Referee would have found that the "Macy Money" policy was "not regularly and routinely enforced and/or followed" at Claimant's store. (Referee Decision at 2.) The Referee had concerns regarding the Statement, particularly that it had been prepared by Loss Prevention Director, not Claimant, and that Claimant was advised that she could "be discharged for refusing to cooperate in an investigation" if she did not sign the Statement. (Referee Decision at 2.) Nevertheless, the Referee concluded that Claimant was "free to sign or not sign the [S]tatement and in this case the [C]laimant chose to sign the document . . . . Since the [C]laimant admitted to providing $522 in [']Macy[] Money[']" to a co-worker because the co-worker asked for it, the Referee found that "[C]laimant acted contrary to [Employer's] policy." (Referee Decision at 2.) The Referee did not believe that Claimant gave "Macy Money" to that individual for doing a good job or for reaching her presales goal. (Referee Decision at 2.) Therefore, the Referee concluded that "there was an unauthorized 'Quid Pro Quo' in which the [C]laimant would print 'Macy Money' for a manager in exchange for 'Macy Money' printed for the [C]laimant." (Referee Decision at 2-3.) Accordingly, the Referee held that Claimant was ineligible for UC benefits under Section 402(e) of

5

the Law because her "actions constitute[d] willful misconduct [for] which no good cause has been given." (Referee Decision at 3.)

Claimant appealed to the Board. The Board found the Referee's Decision properly decided the matter under the UC Law. The Board noted that

> [C]laimant had the opportunity to change or correct her [S]tatement prior to signing it and . . . she did make some changes. She did not change her statement that she gave ["]Macy[] [M]oney["] to a co-worker because the co-worker could not get an employee discount, rather than for any of the reasons testified to at the Referee's hearing.

(Board Order.) Accordingly, the Board adopted the Referee's findings and conclusions as its own, incorporated them into its Order, and affirmed the Referee's Decision. (Board Order.) Claimant now petitions this Court for review of the Board's Order.[2]

---

[2] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." Johns v. Unemployment Compensation Board of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth.), petition for allowance of appeal denied, 97 A.3d 746 (Pa. 2014). "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." Western and Southern Life Insurance Company v. Unemployment Compensation Board of Review, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006). Substantial evidence is "such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." Id. This Court is bound "'to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony'" to determine if substantial evidence exists for the Board's findings. United States Banknote Company v. Unemployment Compensation Board of Review, 575 A.2d 673, 674 (Pa. Cmwlth. 1990) (quoting Taylor v. Unemployment Compensation Board of Review, 378 A.2d 829, 831 (Pa. 1977)).

On appeal, Claimant argues that the Board erred in finding her ineligible for UC benefits for several reasons. Claimant argues that the findings of fact indicating that she violated Employer's "Macy Money" policy are not supported by substantial evidence because she did not violate Employer's policy under these circumstances. Specifically, Claimant asserts that she and other managers in her store, including the former store manager, issued "Macy Money" for reasons beyond those included in the policy without reprisal or being informed that those reasons were unauthorized. Claimant further maintains that, even if her actions violated the policy, she had good cause for those actions because they comported with those of her fellow and higher-level managers in her store. Finally, Claimant argues that the Board should not have relied upon the Statement because she was coerced by threats that she would be discharged for not cooperating with the investigation if she did not sign the Statement.

Section 402(e) of the Law states that an employee is ineligible for UC benefits for any week "[i]n which h[er] unemployment is due to h[er] discharge or temporary suspension from work for willful misconduct connected with h[er] work. . . ." 43 P.S. § 802(e). This Court has defined willful misconduct as:

> (1) the wanton and willful disregard of the employer's interests, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

Guthrie v. Unemployment Compensation Board of Review, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Whether a claimant's conduct rose to the level of willful misconduct is a question of law reviewable by this Court. Docherty v.

7

<u>Unemployment Compensation Board of Review</u>, 898 A.2d 1205, 1209 (Pa. Cmwlth. 2006). "If the employer alleges willful misconduct because the claimant violated a work rule, the employer must prove both the existence of the rule and its violation." <u>Caterpillar, Inc. v. Unemployment Compensation Board of Review</u>, 703 A.2d 452, 456 (Pa. 1997). A claimant must also be "made aware of the existence of the work rule." <u>Bruce v. Unemployment Compensation Board of Review</u>, 2 A.3d 667, 671 (Pa. Cmwlth. 2010).

If the employer satisfies its burden, the burden shifts to the claimant to show that he or she had good cause for the conduct. <u>McKeesport Hospital v. Unemployment Compensation Board of Review</u>, 625 A.2d 112, 114 (Pa. Cmwlth. 1993). "A claimant has good cause if his or her actions are justifiable and reasonable under the circumstances." <u>Docherty</u>, 898 A.2d at 1208-09. A determination of willful misconduct requires a consideration of "all of the circumstances, including the reasons for the [claimant's] noncompliance with the employer's directives." <u>Rebel v. Unemployment Compensation Board of Review</u>, 723 A.2d 156, 158 (Pa. 1998). If a claimant had "good cause for the conduct, it was not willful misconduct." <u>Rossi v. Unemployment Compensation Board of Review</u>, 676 A.2d 194, 198 (Pa. 1996).

Here, the Board relied on the Statement to find that Claimant had violated Employer's policy because, it stated, Claimant could have changed, but did not, the details in the Statement pertaining to issuing "Macy Money" to her co-worker who asked for it because the co-worker could not get an employee discount. (Board Order.) The Board also adopted the Referee's conclusion that the reason provided in the Statement for Claimant issuing the "Macy Money" to her co-worker did not

8

even comply with the extra policy reasons used by the managerial staff in Claimant's store. Notably, the Referee indicated in his analysis, which was adopted by the Board, that, absent the Statement, he would have concluded that Employer's policy was not routinely enforced in Claimant's store. (Referee Decision at 2.) The Board adopted the Referee's findings and conclusions as its own. Thus, whether Claimant's admissions in the Statement were voluntary or coerced is the main issue in determining whether the Board erred in finding Claimant ineligible for UC benefits based on willful misconduct.

Citing Davis v. Unemployment Compensation Board of Review, 426 A.2d 753 (Pa. Cmwlth. 1981), Claimant asserts that the Board capriciously disregarded the competent record evidence indicating that she was coerced into signing the Statement because Loss Prevention Director threatened that she would lose her job for being uncooperative if she did not sign the Statement. These threats, according to Claimant, left her with no choice but to sign the Statement. In response, the Board contends that record evidence supports its conclusion that Claimant was not forced or coerced to sign the Statement and notes that Claimant, herself, testified that she made several changes to the document before signing it. (Hr'g Tr. at 30, R.R. at 37a.) According to the Board, Davis does not support Claimant's argument that she was coerced into signing the Statement.

In Davis, the claimant, who worked at a department store, was discharged after admitting to taking merchandise from the employer in a signed statement made during an interview with the employer's security department. Davis, 426 A.2d at 754. The claimant applied for UC benefits, asserting he had been laid off for lack of work, but he was found to be ineligible based on Section 402(e) of the

Law because of the admitted theft. Id. The claimant appealed and testified at the Referee's hearing that he had been coerced into signing the statement by the employer, who had threatened him with criminal prosecution and discharge. Id. He further indicated that he could not leave the room while being questioned and that he had been promised that, if he signed the statement, he would only receive a suspension. Id. Based on the statement, the claimant was found to have stolen merchandise from his employer and the Board found that he was not coerced, threatened, or otherwise promised more lenient discipline if he signed the statement. Id. at 754-55.

On appeal to this Court, the claimant argued that it was the employer who bore the burden of proving that he was not coerced into signing the statement and the Board's finding that he was not coerced was not supported by substantial evidence. In rejecting the claimant's argument we observed that, "[i]n civil matters[,] the party asserting that he has been the victim of coercion has the burden of proving its existence." Id. at 755 (citing Heckman v. Heckman, 64 A. 425 (Pa. 1906)). This Court indicated that the claimant's argument was whether the Board had capriciously disregarded his testimony in that "someone of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to [the] truth" of his testimony of what occurred during the interview with the employer's security department. Id. We held that the Board did not capriciously disregard the claimant's testimony because, although the claimant was the only witness to testify regarding the events of the interview, the claimant had misstated in his application for benefits that he had been laid off for lack of work. Id. Thus, "persons of ordinary intelligence could, in view of this egregious misstatement, challenge and,

10

in challenging, disbelieve, his account of threats and promises during his questioning." Id.

Claimant contends that, unlike the claimant in Davis who was dishonest in his claim application, she has always maintained that she was forced to sign the Statement. Claimant asserts that the Board placed great weight on the fact that Claimant was permitted to make changes to the Statement authored by Loss Prevention Director, but capriciously disregarded the part indicating that she felt forced to sign the Statement, as well as Claimant's description of the events in her subsequent letter to Employer.

However, the Board, acting in its role as fact finder, reviewed and weighed Claimant's testimony and the record evidence that supported her claims against the contrary evidence presented by Employer. In this role, the Board accepted Employer's evidence that: Claimant was able to make changes to the Statement; she made changes to the Statement, but did not change her admissions about printing and giving "Macy Money" to her co-worker for unauthorized reasons; and she was free not to sign the Statement if she did not want to. (Board Order; Referee Decision at 2.) Claimant, in essence, is asking this Court to reweigh the evidence and give her evidence more weight than Employer's evidence. This we may not do; the Board is the ultimate fact finder in UC proceedings and its findings of credibility and the resolution of evidentiary conflicts are not subject to judicial review. Peak v. Unemployment Compensation Board of Review, 501 A.2d 1383, 1388 (Pa. 1985). Where the findings of fact are supported by substantial evidence, they are binding on this Court even where there is contrary evidence in the record. Morgan v. Unemployment Compensation Board of Review, 108 A.3d 181, 185

11

(Pa. Cmwlth. 2015). Here, Employer's evidence, as well as Claimant's own testimony, supports the conclusion that Claimant was not coerced or forced into signing the Statement.

Davis does not require a different result. "A capricious disregard of evidence occurs where the fact finder willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result." Wise v. Unemployment Compensation Board of Review, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015). "Disturbing an agency's adjudication for a capricious disregard of evidence is appropriate only where the fact[]finder has refused to resolve conflicts in the evidence, has not made essential credibility determinations or has completely ignored overwhelming evidence without comment." Id. at 1263. While in Davis the Board did not capriciously disregard the claimant's unrebutted testimony because the claimant's "egregious misstatement" in his application for benefits conflicted with his testimony, Davis, 426 A.2d at 755, in this matter there was conflicting evidence regarding Claimant's meeting with Loss Prevention Director and her signing the Statement. The Board reviewed and considered the conflicting evidence and resolved the conflicts in Employer's favor. Therefore, the Board cannot be said to have ignored the evidence without comment and, consequently, it did not capriciously disregard Claimant's evidence.

Having concluded that Claimant was not forced or coerced into signing the Statement, we also conclude that Claimant's admissions contained therein constitute substantial evidence that supports the finding that Claimant violated Employer's work rule regarding the proper issuance of "Macy Money." Thus,

12

Employer met its burden of proof under Section 402(e), and the burden now shifts to Claimant to prove that she had good cause for her conduct. <u>McKeesport Hospital</u>, 625 A.2d at 114. "A claimant has good cause if his or her actions are justifiable and reasonable under the circumstances." <u>Docherty</u>, 898 A.2d at 1208-09.

Claimant argues that she had good cause for issuing "Macy Money" for reasons that were outside of Employer's policy because it was a common practice in Claimant's store. Although it appears that Employer's policy was not routinely enforced in Claimant's store and that "Macy Money" was issued for work-related reasons not covered in the policy, the Board held that Claimant admitted to giving co-worker "Macy Money" for reasons other than those testified to at the Referee's hearing. (Board Order.) Even though Claimant's store had less stringent standards for issuing "Macy Money" than those contained in Employer's policy, Claimant's admitted issuance of "Macy Money" to her co-worker because the co-worker could not receive an employee discount did not comport with those less stringent standards. Accordingly, Claimant did not establish that she had good cause for the violation of Employer's "Macy Money" policy to which she admitted in the Statement.

For the foregoing reasons, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER, Judge**

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andrea Briggs,                          :
                                        :
                    Petitioner          :
                                        :
        v.                              :   No. 109 C.D. 2015
                                        :
Unemployment Compensation               :
Board of Review,                        :
                                        :
                    Respondent          :

# **O R D E R**

NOW, September 8, 2015, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.


_____
**RENÉE COHN JUBELIRER, Judge**