Philadelphia Geriatric Center, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

358

Argued September 14, 1979, before Judges Crum-
lish, Jr., Wilkinson, Jr. and Craig, sitting as a panel
of three.

*Barry R. Elson,* with him *Jeffrey Ivan Pasek,* and
*Cohen, Shapiro, Polisher, Shiekman and Cohen,* for
petitioner.

*David R. Confer,* Assistant Attorney General, with
him *Richard Wagner,* Chief Counsel, and *Edward G.
Biester, Jr.,* Attorney General, for respondent.

Opinion by Judge Wilkinson, Jr., October 5, 1979:
Philadelphia Geriatric Center (Center) appeals
from a decision of the Unemployment Compensation
Board of Review (Board) granting benefits to the
claimant, whom the Center employed as a licensed
practical nurse for 17 years but discharged on June
29, 1977. We reverse.

On June 28, 1977, the claimant was assigned to administer five treatments to a particular patient at the Center during her evening shift. The treatment in question involved administering medication to a bedsore of the ankle and applying a clean dressing to the wound. That evening was a very busy one at the Center, and while tending to the patient the claimant ran out of tape to wrap the dressings. She requested more tape, but the quantity given her was insufficient to dress the ankle wound and another wound she was assigned to treat. She reapplied dressing to that other wound but did not get to treat the ankle wound. When making notations on the patient's treatment card, the claimant charted the ankle treatment as having been given by placing her initials in the appropriate box. The proper procedure for charting a treatment a nurse is unable to give is to circle the appropriate box and to write on the back of the card the reason for not doing so.

The next day it was discovered that the ankle medication had not been given. The Center conducted an investigation and terminated the claimant's employment for falsification of patient treatment records in violation of hospital rules.

On July 27, 1976, the Philadelphia Geriatric Center published Nursing Memorandum #7605, governing the failure to give or chart prescribed treatments. In part that policy provides that the charting of treatments which are not given is considered falsification of a legal record and that the first offense will result in immediate dismissal. Nursing Memorandum #7605 was placed in nursing policy manuals kept on every floor in the Center, and in April of 1977, after another employee was discharged for falsification of a patient treatment chart, copies of Nursing Memorandum #7605 were posted on every floor.

The Board found that the claimant had mistakenly charted the ankle treatment as having been given and that this mistake was not intentional and was an honest mistake. Noting that the claimant had never been warned about such conduct, the Board granted benefits to the claimant.

An employee is ineligible for unemployment compensation benefits for any week in which "his employment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . . ." Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 54 P.S. §802(e). Willful misconduct has been defined numerously by this Court as including acts of wanton or willful disregard of the employer's interest, deliberate violations of the employer's rules, conduct in disregard of standards of behavior which the employer has a right to expect, and acts showing intentional and substantial disregard of the employer's interest or the employee's duties and obligations. *Kosmalski v. Unemployment Compensation Board of Review,* 40 Pa. Commonwealth Ct. 527, 397 A.2d 875 (1979).

Where the employer alleges misconduct on the part of the employee, it is the employer's burden to prove that fact with substantial evidence. *Gane v. Unemployment Compensation Board of Review,* 41 Pa. Commonwealth Ct. 292, 398 A.2d 1110 (1979). Since the Board here found against the party with the burden of proof, this Court's narrow scope of review is to determine whether the Board capriciously disregarded competent evidence. "Capricious disregard is defined as a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching the result." *Unemployment Compensation*

*Board of Review v. Atlantic Richfield Co.*, 22 Pa. Commonwealth Ct. 511, 513, 349 A.2d 496, 497 (1975).

After a careful examination of the record we believe that a reasonable person could not disregard the overwhelming evidence in the record indicating that the claimant's conduct constituted willful misconduct. According to Employer Exhibit One, the memorandum of the evening supervisor who did the actual termination, during the initial investigation the claimant's explanation for why the prescribed ankle treatment was not given was that she "didn't see it." However, claimant testified that she knew there were five things she had to do with that patient. Afterwards claimant offered the explanation that on that busy night she had run out of tape. Running out of tape would not explain why the claimant went ahead and marked the treatment as given, when she knew the different procedure for charting a treatment a nurse is unable to give.

Further, all the testimony and evidence on the point indicates that Nursing Memorandum #7605 had been placed in the nursing policy manuals for eleven months and posted on every floor for two months before the incident of concern. The claimant claims she had not read it. Affirmance of the Board finding that she had never been warned about patient neglect and falsification of patient records is difficult in these circumstances.

"A single incident, if sufficiently serious, may warrant a conclusion of willful misconduct." *Schafer v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 200, 202, 378 A.2d 1044, 1045 (1977). In *Schappe v. Unemployment Compensation Board of Review*, 38 Pa. Commonwealth Ct. 249, 392 A.2d 353 (1978) we wrote:

> While the number of accidents cannot be said to be unimportant in a determination of whether

such accidents constitute willful misconduct, we do not believe that the number is the sole and exclusive criterion. Rather, the controlling issue is . . . the nature of the Claimant's negligence. . . .

*Id.* at 253, 392 A.2d at 355.

This Court has noted that a hospital may rightfully expect its employees to carry out their duties, *see Wetzel v. Unemployment Compensation Board of Review,* 29 Pa. Commonwealth Ct. 195, 370 A.2d 415 (1977), and has recognized the need of health care professionals to be able to rely upon the record of medications and treatments administered to each patient, *see Allied Services for the Handicapped, Inc. v. Unemployment Compensation Board of Review,* 32 Pa. Commonwealth Ct. 363, 379 A.2d 650 (1977). Performing prescribed treatments and correctly marking treatment charts are vital components of a nurse's obligation to her employer and to her patients. Any failure to perform those functions is a sufficiently serious offense to constitute willful misconduct.

Though the Board suggests so, *Frick v. Unemployment Compensation Board of Review,* 31 Pa. Commonwealth Ct. 198, 375 A.2d 879 (1977), does not establish that an act of negligence in a hospital setting cannot compel a disqualification under Section 402(e) of the Law. In *Frick,* the claimant, a registered nurse, was dismissed for allegedly removing a catheter from a patient contrary to a physician's orders and for failing to report the patient's condition to the doctor or her supervisors. In reversing the Board's denial of benefits, this Court concluded that there was no evidence that the claimant was the person who removed the patient's catheter. As to the claimant's failure to orally report the patient's condition to the doctor or her supervisors, we noted that the claimant did record

the patient's condition on the patient's chart, that she did inform other nursing personnel who took over as she left, and that under the claimant's job description she was not required to notify her supervisor or a doctor whenever she observed complications but only that she was authorized to do so when in her judgment it was necessary.

Nor does our decision in *Blythe v. Unemployment Compensation Board of Review*, 44 Pa. Commonwealth Ct. 205, 403 A.2d 1029 (1979), in which we reversed the Board's denial of benefits, compel us to affirm the Board here. Though the claimant there, likewise trying to cope effectively with a very heavy work load, attempted to modify prescribed treatment, such attempts consisted not of unilateral decisions but of communications with the doctors regarding the treatment.

It is not critical that Nursing Memorandum #7605 was not brought to the claimant's greater attention. An advance warning is not a prerequisite to justify a discharge for willful misconduct. *Hartley v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 371, 397 A.2d 477 (1979). In *Blystone v. Unemployment Compensation Board of Review*, 17 Pa. Commonwealth Ct. 180, 342 A.2d 772 (1975), this Court, quoting the referee's decision in that case, wrote, " '[i]n any employment relationship, there are certain standards of behavior which the employer has the right to expect of his employees, even though they may not be expressly set forth in the written or verbal contract.' " *Id.* at 182-83, 342 A.2d at 773. *See Smith v. Unemployment Compensation Board of Review*, 28 Pa. Commonwealth Ct. 98, 367 A.2d 811 (1977). A licensed practical nurse should be aware that administering assigned treatments and properly charting patient records are standards of behavior her employer may automatically expect of her.

Accordingly, we will enter the following

ORDER

AND Now, October 5, 1979, the order of the Unemployment Compensation Board of Review, Decision No. B-154209, dated February 28, 1978, is reversed.