787 A.2d 284

**Marcene NAVICKAS, Appellant,**

v.

**UNEMPLOYMENT COMPENSATION REVIEW BOARD, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 29, 2001.

Decided Dec. 31, 2001.

George J. Badey, Philadelphia, for Marcene Navickas.

Bruce Michael Ludwig, Philadelphia, for amicus curiae Service Employees International Union.

Clifford F. Blaze, Harrisburg, for Unemployment Comp. Bd. of Review.

Mark Ecker, for Children's Hosp.

Before: FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, and SAYLOR, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

In this unemployment compensation matter, the Commonwealth Court determined that nurses "are held to a higher standard of care" than most other employees and, therefore, a nurse's inadvertent or non-intentional mistake constitutes

"willful misconduct" under § 402 of the Unemployment Compensation Law, which renders the nurse ineligible for unemployment compensation. *See* 43 P.S. § 802(e). This Court granted review to examine the propriety of the Commonwealth Court's fashioning of a "higher standard" for certain workers in construing the Unemployment Compensation Act. For the reasons set forth below, we hold that the Commonwealth Court erred in fashioning a "higher standard" than is set forth in the Act itself. Accordingly, we reverse.[1]

The facts relevant to this appeal are not disputed. Five months after her graduation from nursing school, appellant was hired as a staff nurse at Children's Hospital of Philadelphia (CHOP) on October 20, 1997. In July or August of 1998, appellant made an error in patient care in the pediatric intensive care unit. As a result, she was placed under the supervision of a nurse preceptor, an experienced pediatric nurse, for approximately five weeks. Appellant was or should have been aware at that time that further errors could result in termination of her employment. After this five-week "reorientation" period ended, appellant once again worked without a preceptor until October 7, 1998, the date of her termination.

One week before October 7, appellant failed to properly dilute an antibiotic before administering it to a patient. Although the patient was unharmed, appellant's mistake made the antibiotic less effective. Appellant was aware that she was required, under CHOP's policies, to look up medication in a

1. The grant of allocatur was not confined to the question of the propriety of the higher standard and, thus, appellant raises the following six additional issues in her brief: (1) whether an inadvertent mistake constitutes willful misconduct; (2) whether the Unemployment Compensation Board of Review (UCBR) erred in reversing the referee's award where appellee did not request a reversal but instead conceded that it had not met its burden of proof; (3) whether the UCBR confused the concepts of good cause and willful misconduct; (4) whether the UCBR violated 43 P.S. § 824 by failing to afford the parties a reasonable opportunity for a fair hearing; (5) whether the UCBR failed to address the issue of appellant's good cause for her inadvertent error; and (6) whether appellant was denied her due process rights. In light of our holding that nurses are not subject to a stricter standard for misconduct under the Act than other employees, we do not reach these additional issues.

reference book "if you have questions regarding the [dilution] ratio" before administering the medication to a patient. On the day in question, appellant glanced at the reference book but did not read it carefully enough because she thought she had administered the medication previously and knew the proper dilution.

On October 7, 1998, appellant was summoned by her supervisor, who informed appellant that she learned of the medication error. According to appellant's testimony before the referee, the supervisor told her that "ordinarily this mistake wouldn't have been a big deal but because of the history [appellant] had, she was going to terminate my employment." Appellant further stated that her supervisor did not accuse her of willfully doing things wrong, but rather was "just not satisfied with my job performance. My manager told me that I wasn't the kind of the [sic] nurse that she wanted around." Appellant's supervisor then offered appellant the option of resigning in lieu of dismissal. Appellant then submitted her resignation.

Appellant filed a claim for unemployment compensation benefits, which the Job Center granted. CHOP filed an appeal. The unemployment compensation referee held a hearing at which appellant, her counsel and CHOP's representative appeared. Appellant was the only witness to testify. On December 18, 1998, the referee affirmed the Job Center's grant of benefits, finding that there was "no competent evidence to establish negligence by the claimant indicating an intentional disregard of the employer's interest and of her duties and obligations to the employer." The referee further found that the medication error was not made "deliberately or intentionally" and, thus, CHOP failed to prove willful misconduct disentitling appellant to compensation benefits.

CHOP appealed to the UCBR, which reversed the referee's decision and denied appellant benefits, finding appellant ineligible under the "willful misconduct" provision of the Act. *See* 43 P.S. § 802. The UCBR stated:

As a nurse the claimant is held to a higher standard of care and negligence or inadvertence is not considered good cause for such conduct. The claimant had been previously put on reorientation and under the supervision of a preceptor for an error in the pediatric intensive care unit and was or should have been aware that her job was in jeopardy should there be another incident.

It is well settled that a claimant's testimony can carry the employer's burden in a willful misconduct case. The Board finds that the claimant's failure to follow the employer's reasonable policy that resulted in a medication error under the circumstances of this case rises to the level of willful misconduct under the Law.

UCBR Decision and Order at 2–3.

A divided panel of the Commonwealth Court affirmed the UCBR's decision. The panel relied upon a previous Commonwealth Court panel decision for the proposition that, " '**Any** failure [by a health care worker] to perform those functions [*i.e.*, dispensing prescribed treatments and correctly marking patient charts] is a sufficiently serious offense to constitute willful misconduct.' " *Navickas v. Unemployment Compensation Board of Review,* Slip op. at 4 (emphasis supplied by Commonwealth Court), *quoting Philadelphia Geriatric Center v. Unemployment Compensation Board of Review,* 46 Pa. Cmwlth. 357, 406 A.2d 1177 (1979). In light of the *Philadelphia Geriatric* case, the panel majority agreed with the Board that "nurses are held to a higher standard of care." The panel majority held that the UCBR "considered the surrounding circumstances and properly determined that, as a health care professional, [appellant's] violation constituted willful misconduct." Slip op. at 4, 6.

Judge James Flaherty dissented. In his view, appellant could properly be fired for incompetence, but that incompetence did not prove willful misconduct for purposes of denying unemployment compensation:

There is no question in my mind that [appellant] should have been fired for her incompetence as a registered nurse.

That is a far cry, however, from finding even a scintilla of evidence here, let alone substantial evidence, that she did anything willfully. Without a willful *mens rea*, there is also no misconduct. The mere fact that she is a health care worker should not transform her negligence, which was proven, into willful misconduct. The law does not so provide. . . .

*Navickas*, Dissenting Slip op. at 1.

█ Section 402 of the Unemployment Compensation Law, which is codified at 43 P.S. 802, sets forth various situations in which an employee shall be deemed ineligible for compensation. At issue in this appeal is subsection (e), which provides that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . . ." 43 P.S. § 802(e). The employer bears the burden of proving that the employee/claimant engaged in willful misconduct. *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 550 Pa. 115, 703 A.2d 452, 456 (1997); *Gillins v. Unemployment Compensation Board of Review*, 534 Pa. 590, 633 A.2d 1150, 1155–56 (1993).

█ This Court's scope of review of an adjudication of the Board "is such that we must affirm unless the adjudication violates the constitutional rights of the appellant, the adjudication is contrary to law, there is a violation of the Board's procedure, or a finding of fact necessary to the decision is not supported by substantial evidence." *Myers v. Unemployment Compensation Board of Review*, 533 Pa. 373, 625 A.2d 622, 624 (1993). *See also Caterpillar, Inc.*, 703 A.2d at 456 n. 5. The question of whether certain activity constitutes "willful misconduct," which is the statutory interpretation question involved here, is a question of law subject to plenary review by this Court. *Temple University v. Unemployment Compensation Board of Review*, 565 Pa. 178, 772 A.2d 416, 418 n. 1 (2001); *Caterpillar, Inc.*, 703 A.2d at 456.

Willful misconduct is not defined in the unemployment compensation statutes; however, this Court has defined willful misconduct in the context of unemployment compensation as:

a) wanton or willful disregard for an employer's interests; b) deliberate violation of an employer's rules; c) disregard for standards of behavior which an employer can rightfully expect of an employee; or d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Caterpillar, Inc.,* 703 A.2d at 456. *See also Myers,* 625 A.2d at 625, *quoting McLean v. Unemployment Compensation Board of Review,* 476 Pa. 617, 383 A.2d 533, 535·(1978) (same). This Court has also recognized that a determination of what amounts to willful misconduct requires a consideration of "all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives." *Rebel v. Unemployment Compensation Board of Review,* 555 Pa. 114, 723 A.2d 156, 158 (1998). *Accord Temple University,* 772 A.2d at 418.

It is notable that the standard we have articulated makes reference to the employer's interests, rules, and expectations, and also emphasizes the totality of the circumstances. Implicit in this necessarily flexible approach to determining what constitutes willful misconduct on the part of an individual employee is a recognition of the myriad working conditions and work rules that apply throughout the Commonwealth. Thus, the conduct that rises to the level of willful misconduct may vary depending upon an individual employee's specific occupation or work situation. Beyond recognizing that the specific circumstances governing a particular occupation or workplace may be relevant both in defining reasonable employer expectations and in assessing what amounts to willful misconduct in failing to meet them, however, this Court has not established or authorized specific sub-standards applicable to individual occupations, nor have we ever suggested that a stricter, or looser, standard than the willful misconduct standard provided in the statute itself governs any particular occupation.

The Commonwealth Court, however, has taken a different tack. In a line of cases beginning with *Philadelphia Geriatric*, the Commonwealth Court has determined that a standard other than willful misconduct should apply to employees in the health care field. In *Philadelphia Geriatric* the Commonwealth Court found that a nurse's failure to administer a required treatment to a patient and to properly note in the chart that the treatment had not been given were sufficient to establish willful misconduct:

> This Court has noted that a hospital may rightfully expect its employees to carry out their duties, *See Wetzel v. Unemployment Compensation Board of Review*, 29 Pa.Cmwlth. 195, 370 A.2d 415 (1977), and has recognized the need of health care professionals to be able to rely upon the record of medications and treatments administered to each patient, *See Allied Services for the Handicapped, Inc. v. Unemployment Compensation Board of Review*, 32 Pa.Cmwlth. 363, 379 A.2d 650 (1977). Performing prescribed treatments and correctly marking treatment charts are vital components of a nurse's obligation to her employer and to her patients. **Any failure to perform those functions is a sufficiently serious offense to constitute willful misconduct.**

406 A.2d at 1180 (emphasis supplied). In a later case involving a nurse's inadvertent failure to check a patient's chart, which resulted in a double dosage of medication, the Commonwealth Court panel noted that such inadvertent violations of an employer's rule generally do not constitute willful misconduct. Citing to *Philadelphia Geriatric*, however, the panel reasoned that "this Court has refused to extend the inadvertence exception to rule violations by health care professionals" and concluded that the claimant was not entitled to benefits. *Myers v. Unemployment Compensation Board of Review*, 88 Pa.Cmwlth. 399, 490 A.2d 18, 20 (1985). Later, the Commonwealth Court summarized its approach to negligent or inadvertent acts of health care professionals as follows:

> As to health care workers, we have held that because of the duty owed by hospitals to their patients, hospital employers may hold employees whose functions are related to

that duty to a high standard of behavior, so that inadvertent mistakes may amount to willful misconduct.

*Holly v. Unemployment Compensation Board of Review,* 151 Pa.Cmwlth. 450, 617 A.2d 80, 83 (1992), *citing Myers* and *Philadelphia Geriatric. Accord Gwynedd Square Center v. Unemployment Compensation Board of Review,* 656 A.2d 562, 566 (Pa.Cmwlth.1995) ("Claimant's conduct here was in violation of Employer's policy and, because as a health care provider Claimant is held to a higher standard of care, her violation of Employer's policy constitutes willful misconduct").

This Court has not specifically commented upon this *ad hoc* "higher" standard that the Commonwealth Court has devised for health care workers.[2]  Nevertheless, we have rejected the notion that mere negligence suffices to prove willful misconduct under the statute.  Indeed, our working definition of willful misconduct speaks only of negligence of such a magnitude as to "indicat[e] an **intentional disregard**" of the employer's interest or the employee's duties.  *Caterpillar, Inc.,* 703 A.2d at 456 (emphasis supplied); *Myers,* 625 A.2d at 625. Moreover, in *Myers,* this Court cited with approval to a Commonwealth Court formulation which held that an employee's negligence constitutes willful misconduct only if " 'it is of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.' " *Id., quoting Coleman v. Unemployment Compensation Board of Review,* 47 Pa.Cmwlth. 113, 407 A.2d 130, 131–32 (1979) (further citation omitted).  Accordingly, the *Myers* Court further reasoned, "it follows that an employer cannot demonstrate willful misconduct by 'merely showing that an employee committed a negligent act, but instead must present evidence indicating that the

2.  Appellee Board notes that the Commonwealth Court has held certain other non-health care workers to a higher standard of care as well.  *See Altemus v. Unemployment Compensation Board of Review,* 681 A.2d 866 (Pa.Cmwlth.1996) (teachers); *Lower Gwynedd Township v. Unemployment Compensation Board of Review,* 44 Pa.Cmwlth. 646, 404 A.2d 770 (1979) (police officers).  This Court has not had occasion to address those situations either.

conduct was of an intentional and deliberate nature.' " 625 A.2d at 625, *quoting Bucher v. Unemployment Compensation Board of Review,* 76 Pa.Cmwlth. 282, 463 A.2d 1241, 1243 (1983). In a footnote, the *Myers* Court specifically noted its refusal to adopt a standard which would improperly equate "negligence" and "willful misconduct," concepts which, the Court noted, "are not interchangeable:"

> Mere "negligence" does not rise to the level of "willful misconduct" without the additional element of an intentional disregard of the employer's interests. Additionally, this [mere negligence] standard ignores the fact that the legislature specifically used the term "willful misconduct" in § 402(e) of the Unemployment Compensation Law and not mere "negligence."

625 A.2d at 626 n. 3 (citation omitted).[3] *See also Finch v. Unemployment Compensation Board of Review,* 692 A.2d 619, 620–22 (Pa.Cmwlth.1997) (recognizing *Myers* Court's rejection of negligence standard to prove willful misconduct; adopting view which "improperly equates negligent conduct, which is generally unintentional, with willful misconduct, which requires a specific intent . . . would be an adoption of essentially the same theory which was rejected by the Supreme Court in *Myers* ").

In light of this authority, we specifically reject the Commonwealth Court's adoption of an *ad hoc* "higher standard of care" for health care workers, which apparently would permit any act of negligence or inadvertence on the part of a health care

---

**3.** *Myers* was filed over the dissent of Justice Zappala, who was joined by then-Justice, now Chief Justice John P. Flaherty and Justice Cappy. The dissent did not take issue with the governing standard. The dissent instead emphasized that the claimant in that case was involved in **three** separate, negligently-caused automobile accidents involving his employer's tractor-trailer, over a six-month period, and causing damages in excess of $14,000. In the dissent's view, that evidence "was sufficient to establish negligence of the employee indicating an intentional disregard of the employer's interest and of his duties and obligations to the employer." 625 A.2d at 627–28 (Zappala,J., dissenting). "Evidence of a series of accidents, attributable to negligence, occurring periodically and with consistent regularity, which produce substantial financial loss to the employer is sufficient to support the conclusion that an employee is guilty of willful misconduct." *Id.* at 630.

worker, standing alone, to be deemed willful misconduct. In so doing, we do not dispute that the needs of certain health care employers are such that they might reasonably deem any act of negligence sufficiently serious as to warrant termination of employment. Nor do we doubt that there are other occupations of sufficient gravity that employers might reasonably conclude that even isolated acts of negligence are sufficiently serious as to warrant termination. But those are questions of policy that are not posed by the Unemployment Compensation Law we are called upon to construe. The Act sets forth a **single** governing standard of willful misconduct, one that does not draw distinctions based upon the type or nature of the employment involved. Moreover, far from authorizing *ad hoc* exceptions to, or modification of, its standard, the Act counsels against judicial constructions which would permit *ad hoc* exceptions to the willful misconduct standard. Indeed, this Court long ago recognized that:

> The Unemployment Compensation Law was enacted to alleviate the hardships attendant upon unemployment. Act of December 5, 1936, P.L. [1937] 2897, § 3, 43 P.S. § 752; *MacFarland v. Unemployment Compensation Board of Review*, 1946, 158 Pa.Super. 418, 45 A.2d 423. **It is a remedial statute designed to provide support for workers who are unemployed except for those disqualified by one of the specific provisions of Section 402.**

*Warner Co. v. Unemployment Compensation Board of Review*, 396 Pa. 545, 153 A.2d 906, 910 (1959) (emphasis supplied).[4] The relevant exception provided in § 402 is the willful

4. The observation in *Warner* is consistent with the "declaration of public policy" contained in the Act itself:

§ 752. Declaration of public policy

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. The principle of the accumulation of

misconduct standard itself. The Courts are not authorized to dilute this standard premised upon perceived special needs of various occupations or employers. Any such request, being in essence a question of policy, is more properly directed to the General Assembly.

This is not to say, of course, that the special needs, interests and expectations of employers and occupations are irrelevant to the question of willful misconduct. As we have noted above, under our precedent, those considerations are certainly germane to determining, among other things, what are the legitimate rules and expectations of an employer, what constitutes a violation or misconduct under those rules, and when conduct is so egregious or repetitive as to warrant a finding that it is willful. But recognition of the relevance of these considerations cannot justify the formulation of a governing standard that is inconsistent with that set forth by the General Assembly.

Because the referee's finding that appellant did not engage in willful misconduct is supported by substantial evidence, and because we hold that it is the willful misconduct standard that prevails and not some higher standard of care, the Commonwealth Court is reversed, and the order of the referee granting benefits to appellant is reinstated.

NEWMAN, Justice, did not participate in the consideration or decision of this matter.

NIGRO, Justice, files a concurring opinion in which ZAPPALA, Justice, joins.

financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

**NIGRO, Justice, Concurring.**

I agree with the majority that the Commonwealth Court improperly set a higher standard of care for nurses than for other types of employees under § 402 of the Unemployment Compensation Law. However, although not applicable in the instant case, I believe that if an employee commits a series of errors, even if unintentional, those multiple errors may support the conclusion that the employee is guilty of willful misconduct under § 402. *See Myers v. Unemployment Compensation Board of Review,* 533 Pa. 373, 625 A.2d 622, 630 (1993) (Zappala, J., dissenting).

ZAPPALA, Justice, joins in this concurring opinion.