# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Homeland Center, : 
                Petitioner : 
                    : 
           v. : No. 1244 C.D. 2016
                    : Submitted: February 3, 2017
Unemployment Compensation : 
Board of Review, : 
                Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE JULIA K. HEARTHWAY, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED: June 13, 2017**

Homeland Center (Employer) petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board), which awarded UC benefits to a former employee, Roy P. Irvin, Jr. (Claimant). Employer contends Claimant should be disqualified from receiving benefits under Section 402(e) of the UC Law[1] because Claimant was terminated for willful misconduct. Having reviewed the record, we find substantial evidence exists to support the Board's findings and discern no error of law or abuse of discretion. Therefore, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e).

After being terminated from his employment, Claimant filed an application for benefits on March 3, 2016. (Claim Record, R.R. at 3a.) A local UC Service Center found Claimant eligible for benefits. (Notice of Determination, R.R. at 42a.) Employer appealed on March 28, 2016, asserting Claimant should be ineligible for benefits under Section 402(e) of the UC Law. (Petition for Appeal, R.R. at 46a-48a.) A hearing was held before a UC Referee (Referee) on April 14, 2016, at which Claimant and multiple witnesses for Employer testified. Following the hearing, the Referee issued a decision that affirmed the Service Center's determination and made the following findings of fact:

1. The Claimant was last employed as a full-time Assistant Director of Housekeeping and Laundry with [Employer] from October 20, 1998 through February 25, 2016, at a final rate of pay of $26.49 per hour.
2. The Employee Conduct and Work Rules provides for disciplinary action, up to and including termination of employment for unacceptable conduct, including neglect of a resident's welfare or well-being; failure to use appropriate level of professional judgment/skills and failing to follow instructions/work procedures.
3. The Progressive Discipline policy provides, in part, in very serious situations, some types of employee problems may justify either a suspension, or, in extreme situations, termination of employment, without going through the usual progressive disciplinary steps.
4. The Claimant was aware of the Employer's policies.
5. On Monday, February 15, 2016, Ehrlich Pest Control was brought in to inspect Room 103 after a report that a bed bug was found in that room.
6. The Director of Environmental Services . . . removed the linen from Room 103 and placed it in the laundry room, but did not properly tie the bags or inform anyone that he was placing the linen in the laundry room.
7. During the evening shift on Monday, February 15, 2016, two employees in the laundry room saw bugs crawling out of the bag.
8. The Claimant did not work on Monday, February 15, 2016.

2

9. When the Claimant returned to work on Tuesday, February 16, 2016, the two employees made the Claimant aware of the situation because they were upset.

10. The Claimant was also made aware that the linen came from Room 103 and that Ehrlich had been in the room that day before to treat the room.

11. On Wednesday, February 17, 2016, the Claimant notified the HR Director/Compliance Officer . . . via text message that two bags of linen were brought down on Monday from Room 103, the bags were untied and bugs were coming out of the bags. The staff was highly upset that no one told them that there were bed bugs in the bags and were upset at the site of the bugs.

12. [The HR Director/Compliance Officer] brought the issue up during a weekly Quality Assurance Meeting.

13. [The Director of Environmental Services] admitted to placing the bag on the floor and apologized for not sealing it and placing it in the laundry bin.

14. The President/CEO (CEO) questioned why the incident was just now being reported and stated that it should have been immediately reported to management on Tuesday.

15. The CEO also asked three employees – [the Director of Environmental Services], Claimant, and the Assistant Director of Nursing (ADON) – to leave the meeting and immediately go to Room 103 to thoroughly check the room for bed bugs.

16. When the Claimant arrived at Room 103, he saw the door being closed to provide treatment to a resident.

17. The Claimant waited around a few minutes and spoke with a housekeeping employee.

18. When the door had not opened after five to ten minutes, the Claimant left the area and went to his office to check emails and voice messages.

19. The Claimant returned to Room 103 about five minutes later, but the door was still closed.

20. When [the Director of Environmental Services] and the ADON arrived at Room 103, the door was closed.

21. The ADON went to speak with the [Director of Nursing] for a few minutes and when she returned, the door was opened.

22. The ADON and [the Director of Environmental Services] inspected the room and returned to the meeting.

23. The Claimant returned to the meeting after the second time he went to Room 103 and found the door still closed.

24. When the CEO asked for [a] report, [the Director of Environmental Services] and the ADON reported no bugs were found.
25. The Claimant did not speak and was not asked to provide his report.
26. The Claimant did not state that he was unable to check the room because the door was closed.
27. Neither [the Director of Environmental Services] nor the ADON mentioned during the meeting that the Claimant was not with them at the time they inspected the room.
28. On February 18, 2016, the CEO and [HR Director/Compliance Officer] met with the Claimant after the CEO was notified by another employee that the Claimant had not searched Room 103.
29. The Claimant admitted that he did not search Room 103, explaining that the door was closed when he arrived at the room.
30. After the CEO explained the importance of the directive, [he] then asked the Claimant for his resignation.
31. The Claimant refused to resign and stated he would have to be terminated.
32. The CEO responded "Okay."
33. When the Claimant asked the CEO why he was being terminated, the CEO informed the Claimant the reason would be in a letter that he will receive.
34. By letter dated February 25, 2016, the Employer informed the Claimant that he was terminated for infractions of Section 802: Employee Conduct and Work Rules, specifically, insubordination, failure to use appropriate level of professional judgment/skills and neglect of a resident's welfare or well-being.

(Referee Decision, Findings of Fact (FOF), ¶¶ 1-34, R.R. at 121a-23a.) The Referee stated she in no way questioned Employer's right to discharge Claimant but found Employer did not present sufficient, competent evidence to meet its burden that Claimant's conduct arose to the level of willful misconduct, which would disqualify him from benefits. (Id., R.R. at 124a.) Employer appealed to the Board, which affirmed, adopting the Referee's findings and conclusions as its own. (Board Decision, R.R. at 137a.) Employer now petitions for review of the Board's Order.

4

On appeal, Employer asserts the Board's decision, in general, was an abuse of discretion, was not supported by substantial evidence of record, and/or was an error of law. Employer more specifically challenges the Board's finding that Employer's directives were not reasonable and that Claimant did not commit willful misconduct. In addition, Employer alleges the Board assumed facts that were not part of the record.

Preliminarily, we note that our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014). On appeal, the Board's findings are conclusive so long as the record taken as a whole contains substantial evidence to support them. Henderson v. Unemployment Comp. Bd. of Review, 77 A.3d 699, 718 (Pa. Cmwlth. 2013). Substantial evidence is "relevant evidence upon which a reasonable mind could base a conclusion." Id. "In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence." Id. "It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made." Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). Finally, it bears emphasis that "the Board is the ultimate fact-finder in unemployment compensation matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence." Id.

5

At issue here is whether Claimant's conduct constitutes willful misconduct. Section 402(e) of the UC Law provides that a claimant is ineligible for benefits for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e). Although "willful misconduct" is not defined in the UC Law, our Supreme Court has held that the term means:

> a) wanton or willful disregard for an employer's interests; b) deliberate violation of an employer's rules; c) disregard for standards of behavior which an employer can rightfully expect of an employee; or d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

Navickas v. Unemployment Comp. Review Bd., 787 A.2d 284, 288 (Pa. 2001). Our Supreme Court has expressly "rejected the notion that mere negligence suffices to prove willful misconduct." Id. at 289. Rather, the conduct must be intentional and deliberate in nature. Id. at 290. Our Supreme Court has also rejected applying a higher standard of care for certain professions, stating "[t]he [UC Law] sets forth a *single* governing standard of willful misconduct, one that does not draw distinctions based upon the type or nature of the employment involved." Id. at 290-91 (emphasis in original).

Whether conduct amounts to willful misconduct requires consideration of "all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives." Rebel v. Unemployment Comp. Bd. of Review, 723 A.2d 156, 158 (Pa. 1998). An employer bears the burden of proving that a claimant engaged in willful misconduct. Navickas, 787 A.2d at 288. Once the employer meets its burden, the burden shifts to the claimant to show good cause for that conduct. Henderson, 77 A.3d at 719. An employee can demonstrate good

6

cause by showing his actions are justified or reasonable under the circumstances. Id.

With the above principles in mind, we turn to this case. Employer maintains Claimant committed willful misconduct by refusing to follow a direct order from the CEO to perform a room inspection and by failing to immediately report the presence of bugs in the laundry room. The Referee and Board acknowledge Claimant failed to do both but concluded he had good cause for not doing so. Employer argues the Board erred and/or abused its discretion because the record does not contain substantial evidence to support its findings, specifically Findings of Fact 16-19 and 23-27. Based upon our review of the record, we conclude there is substantial evidence to support the Board's findings. Employer basically concedes as much in its brief when it acknowledges Claimant testified to this effect. (Employer's Br. at 21-23.) Yet, Employer argues that because the only evidence in support of these findings is Claimant's own uncorroborated testimony, which is inconsistent with other testimony proffered by Employer's witnesses, substantial evidence is lacking. Essentially what Employer is asking this Court to do is to reassess the credibility of the witnesses and believe its witnesses' version of the events over Claimant's account, which we do not have the authority to do. As noted above, the Board is the ultimate fact-finder and is charged with resolving conflicts in evidence and making credibility determinations. Ductmate, 949 A.2d at 342. The relevant inquiry is not whether the record contains evidence to support findings other than those made, but whether there is evidence to support the

findings actually made.  Id.  Based upon Claimant's testimony, which the Referee and Board credited, there was substantial evidence to support their findings.[2]

Employer also argues that the Referee assumed facts not in the record or accepted as facts statements that were erroneous.  In making this argument, Employer points to several statements made in the "Reasoning" section of the Referee's Decision.  One example is the statement that "[t]he Claimant never stated that he did inspect the room; the Claimant was never asked for his report." (Employer's Br. at 31 (quoting Referee Decision at 4, R.R. at 124a).)  No one contends Claimant ever stated he did inspect the room, and the HR Director testified that when Claimant did not give a report at the meeting, he was not specifically asked for one either.  (Hr'g Tr. at 47, R.R. at 108a.)  Similarly, Employer challenges the following statement, "The Claimant credibly testified the door to the room was closed when he initially arrived, while he waited and when he returned." (Employer's Br. at 32 (quoting Referee Decision at 4, R.R. at 124a).) Again, Claimant testified to this effect at the hearing, (Hr'g Tr. at 37, R.R. at 98a), and this testimony is consistent with his position throughout these proceedings dating back to when he first completed the Employment Separation Questionnaire, as well as his interview with Service Center staff.  (Employment Separation Questionnaire, R.R. at 10a; Record of Claimant's Oral Interview, R.R. at 38a.)  All of the statements Employer challenges in its Brief have evidence of record to

---

[2] We also note that, contrary to Employer's assertions, Claimant's testimony was not completely uncorroborated.  For instance, Employer challenges Finding of Fact 16, that the door was closed upon Claimant's arrival, but Employer's witness, the assistant director of nursing, testified that when she first arrived at Room 103, the door was closed, requiring her to return later. (Hr'g Tr. at 28, R.R. at 89a.)

8

support them.[3] Employer simply disagrees with the weight afforded the evidence or how the Board resolved conflicts with the evidence, which are within its exclusive province. Therefore, we find no merit to Employer's argument.

Finally, Employer argues the Board's conclusion that Employer's directive was not reasonable, was an abuse of discretion, not supported by substantial evidence, and was an error of law. It appears to base this argument on a statement it contends the Referee made in her Decision, namely:

> [W]here an employee has been discharged for failing to follow a specific order by his employer, both the reasonableness of the employer's directive and the reasonableness of the employee's refusal must be examined before a finding of willful misconduct can be made. The employer has the initial burden of proving that the demand was reasonable. The burden then shifts to the Claimant who must establish a reasonable response to the directive.

(Employer's Br. at 25.) First, we have reviewed the Referee's Decision and do not see the above-quoted section anywhere within it. Second, even if the statement was made, it is merely a statement of the law, not a conclusion that Employer's directive in this case was unreasonable, as Employer contends. Because neither the Referee nor the Board made explicit findings related to the reasonableness of Employer's directive, there is no need to further address Employer's argument.

Like the Referee and Board, we do not question Employer's right to terminate Claimant. However, it is important to note that "the question of justifiable termination and eligibility for unemployment benefits are two different things; an employee may be fired for completely proper reasons, yet remain

---

[3] We reiterate that the testimony must be viewed in the light most favorable to Claimant, as the prevailing party, and he must be given the benefit of any inferences that can logically and reasonably be drawn from the evidence. Henderson, 77 A.3d at 718.

9

eligible for benefits." Burger v. Unemployment Comp. Bd. of Review, 801 A.2d 487, 490 (Pa. 2002). Employer appears to be conflating the two concepts and has focused on its right to terminate Claimant.

Here, the Board concluded that Claimant's testimony provided good cause for not inspecting the room when directed by the CEO to do so and for not reporting the bugs spotted in the laundry room earlier. Based upon the Board's factual findings,[4] we agree that good cause existed. As discussed above, good cause exists if the claimant's action was justifiable or reasonable under the circumstances. Henderson, 77 A.3d at 719. Here, Claimant twice attempted to comply with the CEO's directive to inspect the room. Both times he went to Room 103, he found the door closed. The first time, Claimant testified, he witnessed an aide closing the door to render treatment to a resident and that family members were present. When he returned a short time later, he found the door still closed and reasonably assumed treatment was still underway. At this point, he returned to the meeting and found his colleagues had already returned. When asked what was found, the Director of Environmental Services and ADON told the CEO no bed bugs were found. When Claimant did not respond, CEO did not press him for a response. It was reasonable for Claimant to not attempt to inspect the room a third time, particularly after his colleagues' negative inspections and Claimant's knowledge that the room had been recently professionally inspected and treated. Therefore, he had good cause for not following Employer's directive.

---

[4] We understand Employer disputes the factual findings, but again, the Board is the ultimate fact-finder so long as its findings are supported by substantial evidence, which we conclude they are.

10

Similarly, Claimant acted reasonably in not reporting the bugs immediately. Claimant first learned about the potential presence of bugs on Tuesday, February 15, 2016, at approximately 5:30 p.m. He reported the matter to his direct supervisor, the HR Director/Compliance Officer, the following day at the quality assurance meeting, which is held weekly at noon, because he was concerned that protocol had not been followed by tying the soiled laundry bag shut. Given the lack of a clear policy that mandated immediate reporting, we cannot conclude this short delay was unreasonable, especially because Claimant was also told the room where the bag originated had already been treated by pest control specialists.

There is no credited evidence that Claimant intentionally disregarded Employer's directive or interest. At worse, he was negligent, which is insufficient to find willful misconduct under well-established precedent. Navickas, 787 A.2d at 289. We are cognizant of the duties and obligations imposed on facilities, such as Employer's, but willful misconduct is a uniform standard applied equally across all professions. Id. at 290-91.

Here, the findings of fact made by the Referee and adopted by the Board are supported by substantial evidence and support this conclusion. Those findings support the legal conclusion that Claimant's conduct did not amount to willful misconduct. Accordingly, we affirm.

 

 

                                      _____
                                        **RENÉE COHN JUBELIRER,** Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Homeland Center,                        :
                    Petitioner          :
                                        :
            v.                          :       No. 1244 C.D. 2016
                                        :
Unemployment Compensation               :
Board of Review,                        :
                    Respondent          :


# **O R D E R**


NOW, June 13, 2017, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED.**


_____
**RENÉE COHN JUBELIRER,** Judge