# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dione Sease,                                    :
                              Petitioner        :
                                                :
          v.                                    :   No. 1200 C.D. 2017
                                                :   Submitted:  February 23, 2018
Unemployment Compensation                       :
Board of Review,                                :
                              Respondent        :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
**JUDGE COHN JUBELIRER**                        **FILED:  April 10, 2018**

Dione Sease (Claimant), pro se, petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board), which affirmed a Referee's Decision finding Claimant ineligible for benefits under Section 402(e) of the UC Law[1] because Claimant was terminated for willful misconduct.  Having reviewed the record, we find substantial evidence exists to support the Board's findings and discern no error of law or abuse of discretion.  Accordingly, we affirm.

Claimant filed an application for benefits on January 15, 2017, stating he was terminated for insubordination from his part-time position as cook at Latshaw & Menditto, Inc. (Employer), which is a parent company of a Kentucky Fried Chicken

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

(KFC) franchise. Claimant stated in his application for benefits that he was sexually harassed by another employee but he was the one written up. (Internet Initial Claims form, Record (R.) Item 2.) He also stated that he wanted to file a complaint because "nothing gets done in th[e] store." (*Id.*) Finally, he stated he asked for a raise and was told he was "too demanding" and was "terminated for telling them what to do." (*Id.*)

Following Claimant's application, Employer was sent a questionnaire in which it confirmed that Claimant was terminated for refusing to comply with Employer's order or request and initiating an act of insubordination. Employer's version of events leading up to Claimant's termination differed somewhat from Claimant's rendition. According to written statements from Employer's Director of Operations and General Manager submitted in response to the questionnaire,[2] they did meet with Claimant who expressed concern about whether another employee with whom Claimant was involved in an altercation was disciplined. Claimant then advised that he was also sexually harassed. When advised by General Manager that Employer would investigate, Claimant became angry, started raising his voice, used profanity, and demanded a raise and that he be called "[s]ir." (Employer Questionnaire, R. Item. 3.) After Claimant left the meeting, he returned to the kitchen where the Director of Operations found him using profanity and discussing the meeting with another employee. After Claimant refused the Director of Operations' order to go home twice, the Director of Operations advised Claimant that he was terminated. When Claimant still refused to leave the premises, the police

---

[2] The written statements were admitted into evidence at the subsequent Referee's hearing over Claimant counsel's objection. The Referee ruled that the Director of Operations and General Manager offered corroborating testimony that was consistent with the written statements.

were called, but Claimant left prior to their arrival. Before leaving, Claimant yelled more profanity and that he would be back. (*Id.*)

Based upon the initial application, Employer's questionnaire, and an oral interview with Claimant, the local UC Service Center found Claimant ineligible for benefits. (Notice of Determination, R. Item 5.) Claimant appealed, and a telephone hearing was scheduled before a Referee.

At the hearing, Employer's Director of Operations and General Manager testified consistent with their written statements. Claimant, who was then represented by counsel, also testified. Claimant testified that one week earlier he had been sexually harassed by the employee with whom he was involved in the altercation. He advised Director of Operations and General Manager about the alleged harassment at their meeting and they responded they would look into it. He also testified that he was upset with being called "kitchen" instead of by his name. Claimant stated he was simply telling a co-worker about his meeting with Employer and denied using any profanity.

Following the hearing, the Referee issued a decision that affirmed the Service Center's determination and made the following findings of fact:

2. On January 13, 2017, the claimant asked for a meeting with the employer's director of operations and also the general manager to discuss an altercation that the claimant had had with a co-worker about a week before the meeting.

3. The employer gave the claimant a write-up for being angry and belligerent in the workplace, but the claimant was upset about the write-up, and he also asked the employer what discipline was given to the other employee involved in the incident.

4. The director of operations, who was hearing about the incident for the first time, told the claimant that disciplinary matters were private and that they would not discuss the other employee's

3

discipline with the claimant nor would they discuss his disciplinary action or the employer's investigation with the other party.

5. The claimant became angry and argumentative, and he demanded that the other employee be immediately terminated, and the claimant also complained that the employer had never given him a raise.

6. When the subject returned to the complaint that the claimant had made against the other employee, the claimant responded with profanity, and after the employer indicated that the employer would take the claimant's complaint seriously, [] the claimant told the employer to "drop it, just drop it, I don't want to file a complaint."

7. The claimant then told the director of operations and the general manager that he wanted to be addressed as "Sir," while in the kitchen.

8. The director of operations had never heard this particular issue mentioned before.

9. The claimant then left the meeting room and went back into the kitchen where he began discussing what he had spoken to the employer about the employee with whom the claimant had had the altercation.

10. The director of operations came back into the kitchen and told the claimant not to discuss the other matter with the third employee.

11. The claimant began using profanity, so the director of operations told the claimant to go home.

12. The claimant refused to go home and used more profanity after which the director of operations insisted that the claimant go home.

13. When the claimant refused to go home again, the director of operations directed the general manager to call the police.

14. After the general manager had called the police, the claimant eventually left, but up until that point, the claimant had refused to obey the director of operation's instructions.

4

(Referee Decision, Findings of Fact (FOF) ¶¶ 2-14.)

The Referee further explained, in the "Reasoning" portion of his Decision, that General Manager first learned of the alleged harassment at the meeting and indicated she would investigate the matter. Yet, Claimant became "rude and argumentative." (*Id.* at 3.) As for allegedly being called "kitchen," the Referee stated there was no evidence that Employer directly called Claimant "kitchen," and instead the term was used more generally to refer to those in the kitchen. The Referee called Claimant's conduct on his last day at work "egregious." (*Id.*) The Referee found Director of Operations and General Manager both credibly testified that Claimant used profanity. He found Claimant's denial of same not credible and stated that "[C]laimant's denial also detracts from the credibility of his other assertions made during his testimony." (*Id.*) In addition, the Referee stated that Employer was not obligated to discuss the discipline of other co-workers with Claimant. Furthermore, the Referee found that there was not much that the Employer could say about the alleged sexual harassment because Director of Operations had just learned about the allegation and had not yet had time to investigate it. Finally, the Referee found the Employer had a reasonable expectation that Claimant not discuss the matter with others. In short, the Referee concluded "[C]laimant's insubordinate behavior coupled with his use of profanity in a restaurant served by the public was certainly contrary to the [E]mployer's best interests even apart from the [E]mployer's rules." (*Id.* at 4.)

5

Claimant appealed to the Board, which affirmed, adopting and incorporating the Referee's findings and conclusions as its own. (Board Order, R. Item 15.) Claimant now petitions for review of the Board's Order.[3]

On appeal,[4] Claimant appears to challenge the Board's decision based on a lack of substantial evidence and that he had good cause for his actions.[5] In response, the Board argues there is substantial evidence to support its findings of fact and the conclusion that Claimant engaged in willful misconduct.

Substantial evidence is "relevant evidence upon which a reasonable mind could base a conclusion." *Henderson v. Unemployment Comp. Bd. of Review*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013). "In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence." *Id.* "It is

---

[3] On February 15, 2018, Claimant filed a motion requesting oral argument in this matter. A per curiam order was issued the next day directing this matter be submitted on briefs. Because the order did not expressly address Claimant's motion, although it effectively denied it, so that the record is clear, we will dismiss the motion as moot.

[4] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

[5] Claimant's Brief is not well developed. The entirety of his "Argument" section is set forth below:

> [Director of Operations] said he fired me for insubordination. When I asked how I was being insubordinate, he said by being "too demanding." I even called the store when I left and that[']s what he said. He heard me talking to another employee about me getting sexually har[]assed and fired me 5 minutes after me, him and [General Manager] spoke in the office. When I called the main office to speak with [the owner], [Director of Operations] answers, laughs, and says "[the owner] do[es]n't want to speak to you."

(Claimant's Br. at 9.)

6

irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made." *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). Finally, it bears emphasizing that "the Board is the ultimate fact-finder in unemployment compensation matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence." *Id.* On appeal, the Board's findings are conclusive so long as the record taken as a whole contains substantial evidence to support them. *Henderson*, 77 A.3d at 718.

First we address whether Claimant's actions constitute willful misconduct. Section 402(e) of the UC Law provides that a claimant is ineligible for benefits for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e). Although "willful misconduct" is not defined in the UC Law, our Supreme Court has held that the term means:

> (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Navickas v. Unemployment Comp. Bd. of Review*, 787 A.2d 284, 288 (Pa. 2001).

We have found that insubordination and the use of profanity towards a supervisor, if unprovoked, constitutes willful misconduct. *Saxton v. Unemployment Comp. Bd. of Review*, 455 A.2d 765, 766 (Pa. Cmwlth. 1983). Likewise, failing to follow an employer's reasonable directives constitutes willful misconduct, unless the employee can demonstrate good cause for his actions. *Pearson v. Unemployment*

7

*Comp. Bd. of Review*, 954 A.2d 1260, 1264 (Pa. Cmwlth. 2008), *abrogated on other grounds by Maher v. Unemployment Comp. Bd. of Review*, 983 A.2d 1264 (Pa. Cmwlth. 2009). "Furthermore, a single refusal to follow instructions can constitute willful misconduct even when the claimant had a good work record." *Id.*

Whether conduct amounts to willful misconduct requires consideration of "all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives." *Rebel v. Unemployment Comp. Bd. of Review,* 723 A.2d 156, 158 (Pa. 1998). An employer bears the burden of proving that a claimant engaged in willful misconduct. *Navickas*, 787 A.2d at 287. Once the employer meets its burden, the burden shifts to the claimant to show good cause for that conduct. *Henderson*, 77 A.3d at 719. An employee can demonstrate good cause by showing his actions are justified or reasonable under the circumstances. *Id.*

With the above principles in mind, we turn to this case. The Referee, whose findings of fact the Board adopted, found Director of Operations had repeatedly asked Claimant to go home after Claimant used profanity, and Claimant refused, leaving only after police had been summoned. (FOF ¶¶ 11-14.) Director of Operations testified that Claimant became "very angry" and "belligerent" during their meeting and was swearing. (Hr'g Tr. at 5.) After Claimant returned to the kitchen, he continued to use profanity, according to Director of Operations. (*Id.* at 6.) Director of Operations asked Claimant twice to go home, but Claimant refused. (*Id.*) Instead, Claimant began using more profanity and became combative, at which point Director of Operations terminated him for insubordination.[6] (*Id.*) General Manager's testimony was consistent with Director of Operations' testimony. She testified that she remained in the office after the meeting but could still hear Claimant

---

[6] Claimant denied using profanity, but the Referee and Board found Claimant was not credible. We are bound by that credibility determination. *Ductmate Indus., Inc.*, 949 A.2d at 342.

8

from the kitchen area. (*Id.* at 10.) This is substantial evidence to support the Board's findings.

Essentially what Claimant is asking this Court to do is to reassess the credibility of the witnesses and believe his version of the events over Employer's account, which we do not have the authority to do. As noted above, the Board is the ultimate fact-finder and is charged with resolving conflicts in evidence and making credibility determinations. *Ductmate*, 949 A.2d at 342. The relevant inquiry is not whether the record contains evidence to support findings other than those made, but whether there is evidence to support the findings actually made. *Id.* Based upon the testimony of Director of Operations and General Manager, which the Referee and Board credited, and the testimony of Claimant, which was not credited, there is substantial evidence to support the findings.

These findings also are sufficient to conclude that Claimant engaged in willful misconduct. Claimant's repeated use of profanity, as found by the Board, constitutes willful misconduct. *Saxton*, 455 A.2d at 766. Claimant's refusal to comply with Director of Operations' repeated requests that Claimant leave the premises because of his behavior also is sufficient to constitute willful misconduct. In *Pearson*, we held that a claimant's refusal to leave the premises when he was repeatedly asked constituted willful misconduct. 954 A.2d at 1264.

Although Employer satisfied its burden of showing Claimant engaged in willful misconduct, the analysis does not end there. We must consider whether Claimant showed good cause for his conduct. *Henderson*, 77 A.3d at 719. Claimant appears to argue that his conduct was justified because he was sexually harassed by another employee and was merely expressing frustration with what he perceived as

9

Employer's inaction.[7]  The Board, however, adopted the Referee's findings that Employer had just learned of the alleged harassment at that meeting and indicated it would investigate.  This finding, too, is supported by Director of Operation's testimony, (Hr'g Tr. at 17), as well as Claimant's own testimony that he reported the alleged harassment to Employer on January 13, 2017, the day of the meeting, and was told Employer would look into it, (*id.* at 14).  Employer's response was reasonable given what it knew at the time, whereas Claimant's conduct – using profanity loudly and becoming belligerent and combative – was not.  Claimant did not show good cause for his conduct.

Based upon our review of the record, we conclude there is substantial evidence to support the Board's findings.  Because Employer met its burden of showing that Claimant engaged in willful misconduct and Claimant did not demonstrate good cause for his actions, we affirm the Board's Order.

 

**RENÉE COHN JUBELIRER,** Judge

---

[7] To the extent Claimant alleges he had good cause because he was called "kitchen," we disagree.  As the Referee and Board found, there is no evidence that Claimant was directly called "kitchen."  Claimant's testimony shows the term was used more generally, such as "tell the kitchen we need" something, referring broadly to those who work in the kitchen.  (Hr'g Tr. at 15.)

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dione Sease,
              Petitioner

        v.

Unemployment Compensation
Board of Review,
              Respondent

:
:
:
:
:   No. 1200 C.D. 2017
:
:
:
:

## O R D E R

**NOW**, April 10, 2018, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is **AFFIRMED.** Claimant's motion requesting oral argument is **DISMISSED AS MOOT.**

_____
**RENÉE COHN JUBELIRER,** Judge